UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

RONALD L. HESTER,

                                   Plaintiff,

        -against-                                        1:20-CV-1153 (LEK/CFH)

DETECTIVE REGAN, *et. al.*,

                                   Defendants.

---

## MEMORANDUM-DECISION AND ORDER

### I.      INTRODUCTION

Pro se Plaintiff Ronald L. Hester commenced this action pursuant to 42 U.S.C. § 1983 on September 21, 2020. See Dkt. No. 1. Plaintiff later filed an amended complaint on February 26, 2021, asserting claims against Detective Regan ("Regan"), Detective Jason Kelly ("Kelly"), and Sergeant Plante ("Plante") (collectively, "Defendants"). Dkt. No. 8 ("Amended Complaint").

After this Court dismissed several of Plaintiff's claims, see Dkt. Nos. 10 ("April Report and Recommendation"), 11, the following claims remain: (1) several violations of Fourth Amendment search protections against all Defendants; (2) failure to intervene against Regan and Kelly; and (3) false arrest and false imprisonment against all Defendants. See generally Am. Compl.; see also Apr. R. & R. at 9–24.

Now before the Court is Defendants' motion for summary judgment, Dkt. No. 40 ("Motion"), and Defendants' statement of material facts, Dkt. No. 40-3 ("Statement of Material Facts" or "SMF"). Plaintiff opposes the motion, Dkt. No. 47 ("Response"), and has filed a response to Defendants' Statement of Material Facts, Dkt. No. 47-2 ("Response to Statement of Material Facts" or "RSMF"). Defendants have also submitted a reply memorandum. Dkt. No. 51

("Reply"). For the reasons that follow, Defendants' motion for summary judgment is granted in part and denied in part.

## II.      BACKGROUND

Plaintiff's factual allegations are detailed in the April Report and Recommendation issued by the Honorable Christian F. Hummel, United States Magistrate Judge, familiarity with which is assumed. <u>See</u> Apr. R. & R. at 4–8.

## III.     LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure instructs courts to grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute is "'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving part." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). Thus, while "[f]actual disputes that are irrelevant or unnecessary" will not preclude summary judgment, "summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Id.</u>; <u>see also</u> <u>Taggart v. Time, Inc.</u>, 924 F.2d 43, 46 (2d Cir. 1991) ("Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted.").

The party seeking summary judgment bears the burden of informing a court of the basis for the motion and identifying those portions of the record that the moving party claims will demonstrate the absence of a genuine dispute of material fact. <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

In attempting to defeat a motion for summary judgment after the moving party has met its initial burden, the nonmoving party "must do more than simply show that there is some

metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party may not rely on mere conclusory allegations, speculation or conjecture, Fischer v. Forrest, 968 F.3d 216, 221 (2d Cir. 2020), and must present more than a mere "scintilla of evidence" supporting its claims, Anderson, 477 U.S. at 252. At the same time, a court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party, Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S 133, 150 (2000), and must "eschew credibility assessments[,]" Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 122 (2d Cir. 2004) (quoting Weyant v. Okst, 101 F.3d 845, 854 (2d Cir. 1996)). Thus, a court's duty in reviewing a motion for summary judgment is "carefully limited" to finding genuine disputes of fact, "not to deciding them." Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).

## IV.    DISCUSSION

Construing Plaintiff's Amended Complaint liberally, Plaintiff appears to raise five claims against Defendants. First, Plaintiff alleges a violation of his Fourth Amendment rights against unlawful search against Defendants, arguing the search warrant issued by the state court, Dkt. No. 40-4 ("Search Warrant"), was invalid due to misstatements by Defendants, Am. Compl. at 11. Second, Plaintiff claims a Fourth Amendment unlawful search by arguing that Defendants exceeded the scope of the Search Warrant. Id. Third, Plaintiff claims that Plante violated Plaintiff's Fourth Amendment rights by conducting an unlawful visual cavity search. Id. at 3. Fourth, Plaintiff claims that Regan and Kelly failed to intervene to prevent Kelly's unconstitutional visual cavity search. Id. Fifth, Plaintiff makes a claim of false arrest and false imprisonment based on his unlawful arrest and detention. Id. The Court addresses Plaintiff's first two claims together, and then addresses Plaintiff's latter three claims.

**A.  Invalid Search Warrant and Scope of Search**

Plaintiff claims that Defendants secured an invalid warrant for 52 ½ Philip St. Apartment #1 (the "Apartment"), which was owned by Plaintiff's acquaintance, Bryant Harden ("Harden"). See Am. Compl at 3, 11. Plaintiff also contends that Defendants exceeded the scope of that warrant. Id. From this, Plaintiff argues that Defendants unlawfully impinged on his Fourth Amendment protections against unlawful searches. Id.

*1.  The Validity of the Search Warrant*

In reviewing the validity of a state court's search warrant, "great deference" must be given "to a magistrate's determination." United States v. Leon, 468 U.S. 897, 914 (1984). "Normally, the issuance of a warrant by a neutral magistrate, which depends on a finding of probable cause, creates a presumption that it was objectively reasonable for the officers to believe that there was probable cause." Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir. 1991). "A plaintiff who seeks to challenge the validity of the warrant must" show that "(1) the affiant knowingly and intentionally, or with a reckless disregard for the truth, made false statements or omissions in his application for a warrant, and (2) such statements or omissions were necessary or otherwise essential to the finding of probable cause." Bey v. Fernandez, No. 15-CV-7237, 2018 WL 4259865, at *5 (E.D.N.Y. Sept. 5, 2018) (citing Rivera v. United States, 928 F.2d 592, 604 (2d Cir. 1991)). A plaintiff must allege that any misrepresentation or omission "was 'designed to mislead' or was 'made in reckless disregard of whether [it] would mislead.'" United States v. Rajaratnam, 719 F.3d 139, 153 (2d Cir.2013) (quoting United States v. Awadallah, 349 F.3d 42, 68 (2d Cir.2003)) (emphasis omitted).

Here, Plaintiff claims that the Search Warrant was invalid because Kelly—who submitted the application for the warrant—failed to inform the state court that there was "change in

circumstances that may have led [Kelly] to believe" that Harden "may have lived elsewhere."
Am. Compl. at 11. Specifically, Plaintiff argues that Harden only lived on the first floor of the
building, and thus the Apartment was solely located on the first floor. Resp. at 3–4. Plaintiff
claims that Kelly was aware of this, but instead told the state court that Harden lived in the
second and third floors of the building. Id. According to Plaintiff, this was an intentional
misstatement by Kelly so that the state court would "give [law enforcement] access to the whole
building." Id. at 4.

      Plaintiff's argument is unconvincing. Whether Harden resided on the first, second, or
third floor of the building is irrelevant. In Kelly's search warrant application, he specifically
asked to search all three stories of the building. See Search Warrant at 5. The state court granted
this request, and the court did not limit the search to the floor(s) that Harden resided on. Id. at 1–
2. Any discussion of where precisely Harden lived is immaterial to the validity of the warrant.
The Court therefore has no reason to find that the search warrant was invalid and disturb the
"great deference" afforded "to a magistrate's determination." Leon, 468 U.S. at 914.

### 2.  The Scope of the Search of the Apartment

      The Second Circuit cautions that "[s]earch warrant procedures are not mere formalities;
they protect against 'indiscriminate searches and seizures.'" United States v. Bershchansky, 788
F.3d 102, 111 (2d Cir. 2015) (quoting Payton v. New York, 445 U.S. 573, 583 (1980)). "[T]he
Fourth Amendment requires that the search warrant describe with particularity the place to be
searched and the items to be seized. This particularity requirement protects individuals from
exploratory rummaging not supported by probable cause." Id. (cleaned up). In determining
whether a police officer exceeded the scope of search warrant, courts "look directly to the text of
the search warrant to determine the permissible scope of an authorized search." Id. "In

determining the permissible scope of a search that has been authorized by a search warrant . . .

we must look to the place that the magistrate judge who issued the warrant intended to be

searched [and] not to the place that the police intended to search when they applied for the

warrant." United States v. Voustianiouk, 685 F.3d 206, 211 (2d Cir.2012).

Plaintiff contends that Defendants exceeded the scope of the Search Warrant, stating that,

"[a]fter [Kelly] secur[ed] a warrant for the first floor[,] he then executed the warrant elsewhere."

Am. Compl. at 11. Plaintiff further explains in his Response that the Search Warrant was

specifically issued for the Apartment, which was only located on the first floor of the building.

Resp. at 3–8. Plaintiff contends that the Search Warrant did not permit a search of the second and

third floors of the building, which, according to Plaintiff, were not a part of the Apartment. Id.

Because Defendants searched the second and third floors, Plaintiff argues that this exceeded the

scope of the Search Warrant. Id.

Plaintiff's argument is unavailing. The Search Warrant specifically describes the

Apartment "as a three story multi-family dwelling," and gives law enforcement the authority to

search the Apartment. Search Warrant at 3. Whether the Apartment was actually located on the

first floor is irrelevant. It is clear from "the text of the search warrant," Bershchansky, 788 F.3d

at 111, that "the place that the magistrate judge who issued the warrant intended to be searched"

was all three floors of the building, Voustianiouk, 685 F.3d at 211. Thus, Defendants did not

exceed the scope of the warrant by searching the second and third floors of the building.

### 3.   Standing

To bring an unlawful search and seizure claim under the Fourth Amendment, a litigant

"must demonstrate that he personally has an expectation of privacy in the place searched, and

that his expectation is reasonable." Minnesota v. Carter, 525 U.S. 83, 88 (1998). "To contest the

validity of a search, a [litigant] must demonstrate that he *himself* exhibited an actual subjective expectation of privacy in the area searched, and that this subjective expectation is one the society is willing to accept as reasonable." United States v. Fields, 113 F.3d 313, 320 (2d Cir. 1997). If a litigant seeks to establish "a reasonable expectation of privacy in another's apartment," courts in the Second Circuit look to a variety of factors, "including whether he had a key, whether he used the apartment in the owner or lessee's absence; whether he paid rent for the privilege of using the apartment; whether he could bring guests into the apartment; and whether he could come and go as he pleased, even if the owner was not present." United States v. Boone, No. 02-CR-1185, 2003 WL 841088, at *3 (S.D.N.Y. Mar. 6, 2003) (citing Fields, 113 F.3d 320–21).

Here, it was not Plaintiff's residence that was searched, but rather the residence of one of Plaintiff's acquaintances. See Am. Compl. at 11. Plaintiff was instead a visitor of the Apartment at the time of the search, and Plaintiff states that he had only been in the apartment for "forty five seconds" before Defendants searched the Apartment. Id. at 12. Plaintiff must therefore show that one of the Boone factors apply to him to establish a reasonable expectation of privacy in the Apartment. Nowhere does Plaintiff provide evidence or suggest that any of these factors apply to him. See generally id.; Resp. That Plaintiff repeatedly admits in his own papers that he was in the Apartment for a very short period of time—"forty five seconds"—before the search only further establishes that the Boone factors are inapplicable here. See Am. Compl. at 12. Plaintiff thus did not have a reasonable expectation of privacy in the Apartment, and therefore does not have standing to challenge the validity of the Search Warrant or the search of the Apartment. Accordingly, Plaintiff's dual Fourth Amendment claims regarding the Search Warrant are dismissed.

In summary, the Court finds that the Search Warrant was valid and that Defendants did not exceed the scope of the Search Warrant. The Court also finds that Plaintiff does not have standing to challenge the validity of the Search Warrant or the search of the Apartment. Thus, the Court dismisses Plaintiff's dual Fourth Amendment claims regarding the Search Warrant.

### B.  Plaintiff's Remaining Claims

The Court next considers Plaintiff's claims for unlawful search and seizure against Plante for the visual cavity search, failure to intervene against Regan and Kelly, and false arrest and imprisonment against all Defendants. Defendants claim they are protected under qualified immunity for each claim. Mot. at 9–10.

Government officials are protected from civil liability under qualified immunity "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time." Anderson v. Creighton, 483 U.S. 635, 639 (1987) (internal citations omitted). Consequently, qualified immunity shields "public officials from liability for civil damages when one of two conditions are satisfied: (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." Russo v. City of Bridgeport, 479 F.3d 196, 212 (2d Cir. 2007) (quotations omitted) (citing Poe v. Leonard, 282 F.3d 123, 133 (2d Cir. 2002)). The Supreme Court has indicated that, "[f]or a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Hope v. Pelzer,

536 U.S. 730, 739 (2002). The "inquiry is not whether the officer *should have* acted as he did.

Nor is it whether . . . [the officer] *would have* acted in the same way. It is instead whether *any*

reasonable officer, out of the wide range of reasonable people who enforce the laws in this

country, *could have* determined that the challenged action was lawful." Figueroa v. Mazza, 825

F.3d 89, 100 (2d Cir. 2016).

### 1.   *The Visual Cavity Search*

"Typically, a search requires a warrant in order to be reasonable under the Fourth

Amendment; however, the search-incident-to-arrest doctrine is an exception to the Fourth

Amendment's warrant requirement. Under this doctrine, the lawful arrest itself establishes the

legality of the search." Taylor v. City of New York, No. 19-CV-6754, 2022 WL 744037, at *17

(S.D.N.Y. Mar. 11, 2022) (first citing United States v. Diaz, 854 F.3d 197, 205 (2d Cir. 2017);

and then citing United States v. Robinson, 414 U.S. 218, 235 (1973)). To show a "lawful arrest"

in the context of qualified immunity, "the defending officer need only show 'arguable' probable

cause." Lee v. McCue, No. 04-CV-6077, 2007 WL 2230100, at *2 (S.D.N.Y. July 25, 2007)

(quoting Lee v. Sandberg, 136 F.3d 94, 103 (2d Cir. 1997)). "Arguable" probable cause exists

when "a reasonable police officer in the same circumstances and possessing the same knowledge

as the officer in question *could* have reasonably believed that probable cause existed in the light

of well-established law." Lee, 136 F.3d at 103.

The Second Circuit has outlined a set of standards specific to visual cavity searches.

"[V]isual body cavity searches incident to all arrests . . . must be based on reasonable suspicion

to believe that the arrestee is secreting evidence inside the body cavity to be searched." Sloley v.

VanBramer, 945 F.3d 30, 39 (2d Cir. 2019). Courts have specifically analyzed this "reasonable

suspicion" standard in the context of qualified immunity. Where an officer must "have

reasonable suspicion before undertaking a search, [he] is entitled to qualified immunity unless [a court] can say on the somewhat unique facts before [it] that it is clearly established that no reasonable suspicion justified a visual body cavity search." Id. at 43. However, the Second Circuit "has denied qualified immunity to officers who conducted searches 'in the absence of indicia that [the Second Circuit] or New York State courts have found to support individualized reasonable suspicion.'" Bobbit v. Marzan, No. 16-CV-2042, 2020 WL 5633000, at *12 (S.D.N.Y. Sept. 21, 2020) (quoting Sloley, 945 F.3d at 46). Those indicia include evidence that the target was "fidgeting or moved about suspiciously," "reached or attempted to reach his hands down his pants," was "observed [] putting drugs down his pants or retrieving drugs (or anything else) from inside his pants," or "was previously known to secrete drugs inside his anal cavity." Sloley, 945 F.3d at 46.

Here, Plaintiff offers several arguments as to why the visual cavity search performed by Plante constituted an illegal search. First, Plaintiff seems to argue that the visual body search was improper because his arrest was unlawful. Plaintiff suggests that the arrest was unlawful because the arrest resulted from an invalid Search Warrant and Defendants exceeding the scope of the Search Warrant. See Resp. at 10–17. However, as discussed in supra Section IV.A, the Search Warrant was valid and Defendants did not exceed the scope of the search warrant.

Plaintiff also appears to posit that the arrest was unlawful because Plante did not have probable cause to arrest Plaintiff. See Resp. at 10–17. Lowe v. City of New York is instructive on this point. No. 17-CV-906, 2020 WL 1536335 (E.D.N.Y. Mar. 31, 2020). In that case, plaintiffs filed a Section 1983 claim against various police officers who arrested plaintiffs after finding plaintiffs sitting near drugs at a friend's residence. Id. at *1. At issue was whether the defendants had conducted a lawful arrest. Id. at *3. The court ultimately found that "arguable

probable cause [existed] to arrest the plaintiffs," noting the circumstance that made the arrest lawful:

> The defendants received information from a confidential informant that [plaintiffs' friend] was selling crack cocaine from his apartment, and secured a search warrant based on that information. When police went into the one room apartment, Detective Joseph smelled smoke and saw the plaintiffs near where drugs and contraband were found, near a running faucet, suggesting they had tried to flush drugs down the drain.

Id. at *5. Here, the facts are even starker than in Lowe. The parties do not dispute that while searching the Apartment, law enforcement uncovered a large quantity of crack cocaine "found in multiple bags in multiple locations throughout the apartment," "a loaded gun," and drugs located on the person of one of the other individuals located in the Apartment.[1] SMF ¶¶ 20, 22. Given these facts and the precedent set by the Lowe court, the Court finds that Plante "*could* have reasonably believed that probable cause existed in the light of well-established law." Lee, 136 F.3d at 103. Thus, Plaintiff's argument that the arrest is unlawful fails.

Plaintiff also appears to argue that Plante did not have reasonable suspicion to search Plaintiff. Resp. at 11–13. Here, Plaintiff's argument is stronger. Pursuant to Sloley, there needed to be some indicia—even under the leniency afforded police defendants under qualified immunity—showing that Plaintiff had drugs in his cavity prior to conducting a highly invasive visual cavity search. The only the evidence that qualifies as a Sloley indicium is Plante's testimony that, "[w]hile in custody, Plaintiff stated that he had a quantity of crack and marihuana

---

[1] The Court notes that Plaintiff disputes these assertions in his Response to Statement of Material Facts. However, he does not appear to dispute the factual accuracy of these statements. He instead objects that these assertions are "not a material fact as to any of the Plaintiff's claims" and that the individual who "was found with narcotics was the target and to date there is no disposition that exist as to the target." RSMF ¶¶ 20, 22. Considering that Plaintiff does not appear to object to the accuracy of these statements, the Court treats the factual veracity of these assertions as undisputed.

beneath the front of his underwear." SMF ¶ 21. That fact, however, is disputed by Plaintiff, who claims that "no statement was made by the [P]laintiff inside the residence." RSMF ¶ 21. Outside of this, Plante does not offer any other indicia that would meet the <u>Sloley</u> standard for finding reasonable suspicion. Thus, because the sole indicia offered by Plante is a disputed fact, the Court cannot find in favor of Plante on the issue of the visual cavity search.

### 2. Failure to Intervene

Police officers "have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." <u>Anderson v. Branen</u>, 17 F.3d 552, 557 (2d Cir. 1994). A police officer is liable for failure to intervene under Section 1983 when "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." <u>Jean-Laurent v. Wilkinson</u>, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008) (citations omitted). "It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite for an award of damages under § 1983.'" <u>Provost v. City of Newburgh</u>, 262 F.3d 146, 154 (2d Cir. 2001) (quoting <u>Wright v. Smith</u>, 21 F.3d 496, 501 (2d Cir. 1994)). "With respect to a claim of failure to intervene, an officer is personally involved in the alleged constitutional deprivation if he was present when it occurred, 'yet failed to intercede on behalf of the victim even though he had a reasonable opportunity to do so.'" <u>Hardy v. Baird</u>, No. 13-CV-7402, 2016 WL 2745852, at *11 (S.D.N.Y. May 10, 2016) (quoting <u>Russo v. DeMilia</u>, 894 F. Supp. 2d 391, 414 (S.D.N.Y. 2012)). Police officers are not protected under qualified immunity for failure to intervene if they "permitted fellow officers to violate a suspect's clearly established statutory or constitutional rights of which a reasonable person would have known"

and the failure to intervene occurred "under circumstances making it objectively unreasonable for him to believe that his fellow officers' conduct did not violate those rights." Riciutti v. N.Y.C. Transit Auth., 941 F.2d 119, 129 (2d Cir. 1991).

Here, Plaintiff asserts that Regan and Kelly were at the site of the strip search and did not intervene to prevent an unconstitutional search. Am. Compl. at 11. Regan and Kelly argue that "the visual search was lawful and therefore Plaintiff's derivative failure to intervene claim should be dismissed as they had no duty to intervene and protect Plaintiff from anything less than a Constitutional violation." Mot. at 11. However, as discussed in supra Part IV.B.1, Defendants have not established that the visual cavity search was lawful. Given that Regan and Kelly were present at search that may have been unlawful and "failed to intercede on behalf of" Plaintiff, the Court cannot say at this juncture that Defendants are entitled to dismiss this claim. Russo, 894 F. Supp. 2d at 414.

Furthermore, courts in this Circuit have refused to grant summary judgment—even under the leniency afforded to police defendants through qualified immunity—on failure to intervene claims similar to this case. Those courts have found that where a police defendant was present at a strip search, and the court earlier refused to grant summary judgment on the underlying unlawful search claim, summary judgment on a failure to intervene claim could not be granted to the defendant. See, e.g., Hardy v. Baird, No. 13-CV-7402, 2016 WL 2745852, at *13, 15 (S.D.N.Y. May 10, 2016) ("There is, however, some evidence to suggest that [police defendant] was waiting near the bathroom for the results of [plaintiff]'s strip search, and that he was present for some portion of the time that the search warrant was being drafted. Having already denied Defendants summary judgment with respect to these searches, the jury will have the opportunity to decide whether [police defendant] failed to intervene with respect to the alleged violations. . . .

[Q]uestions of material fact predominate such that the Court is not presently equipped to determine whether Defendants would be entitled to qualified immunity on [the failure to intervene] claim[]." (citations omitted)).

### 3.  *False Arrest and False Imprisonment*

"The elements necessary to state a claim for false arrest under § 1983 are the same as those necessary to state a claim for false arrest under New York law." Kraft v. City of New York, 696 F. Supp. 2d 403, 418 (S.D.N.Y. 2010), aff'd, 441 F. App'x 24 (2d Cir. 2011) (citing Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996)). "To state a claim for false arrest under New York law, a plaintiff must show that (1) the defendant intentionally confined the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise justified." Id. (citing Posr v. Doherty, 944 F.2d 91, 97 (2d Cir. 1991)). "In New York, the tort of false arrest is synonymous with that of false imprisonment." Posr, 944 F.2d at 96. "Interpreting . . . New York law in the context of federal civil rights actions, [the Second Circuit] has uniformly rejected Fourth Amendment false arrest claims premised on lawful arrests supported by probable cause." Russo, 479 F.3d at 203–04.

Here, Plaintiff argues that Defendants subjected Plaintiff to false arrest and false imprisonment on the basis that Defendants conducted an unlawful arrest. See Am. Compl. at 5, 11. However, as discussed supra in Parts IV.A and IV.B.1, Plaintiff's arrest was in fact lawful as Defendants had a valid search warrant, did not exceed the scope of the warrant, and had arguable probable cause to arrest Plaintiff. Given that the Second Circuit "has uniformly rejected Fourth Amendment false arrest claims premised on lawful arrests supported by probable cause," the Court finds that Plaintiff's false arrest and false imprisonment claims fail. Russo, 479 F.3d at 204.

## V.      CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendants' motion for summary judgment (Dkt. No. 40) is

**GRANTED in part** with respect to Plaintiff's claims of: (1) a Fourth Amendment violation

against all Defendants for an invalid warrant; (2) a Fourth Amendment violation against all

Defendants for exceeding the scope of the warrant; and (3) false arrest and false imprisonment

against all Defendants; and it is further

**ORDERED**, that Defendants' motion for summary judgment (Dkt. No. 40) is **DENIED**

**in part** with respect to Plaintiff's claims of: (1) a Fourth Amendment violation against Plante for

an illegal visual cavity search; and (2) failure to intervene against Regan and Kelly for failure to

prevent an illegal visual cavity search; and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on all

parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:      August 30, 2023
            Albany, New York

LAWRENCE E. KAHN
United States District Judge